GERALD B. SHEPPARD, Appellant-Respondent, v CHARLES A. SMITH WELL DRILLING AND WATER SYSTEMS, Respondent, and SMEAL MANUFACTURING COMPANY, INC., Respondent-Appellant.

Third Department, May 12, 1983

APPEARANCES OF COUNSEL

*Appelbaum & Eisenberg* (*Bertram W. Eisenberg* of counsel), for appellant-respondent.

*Ingber, Lagarenne, Meltzer & Dubois* (*Lawrence E. Lagarenne* of counsel), for respondent-appellant.

*Cline, MacVean, Lewis & Sherwin* (*Monte J. Rosenstein* of counsel), for respondent.

OPINION OF THE COURT

LEVINE, J.

Plaintiff originally commenced this action against defendant Charles A. Smith Well Drilling and Water Systems (Smith) in a complaint grounded in negligence for serious personal injuries arising out of an accident which occurred during a visit at Smith's business premises and workshop on December 17, 1980. At the time of the accident, Smith was operating a derrick, or hoist device, manufactured by defendant and third-party defendant Smeal Manufacturing Company, Inc. (Smeal), which was mounted on Smith's 1974 Chevrolet pickup truck. The device was generally used in water well drilling operations to raise or lower water pumps and lengths of rigid or flexible plastic water pipes. The hoist included optional Smeal attachments consisting of a powered revolving reel to roll or unroll the flexible plastic water pipe and a remote ignition switch which permitted the truck motor to be turned on and off from outside the cab. The truck motor powered both the raising and lowering of the boom of the hoist and the turning of the pipe reel. It was Smith's intent to use the Smeal hoist and reel apparatus to roll plastic pipe inside his shop. The reel was raised and suspended by a second hoist attached to a metal ceiling trolley in the shop. Smith then activated the outside ignition switch for the truck in order to start the truck motor and to power the rotation of the reel for rolling the lengths of plastic pipe. Unfortunately, he had inadvertently left the truck in gear and, when the motor was started, the truck immediately lurched forward with such sudden force that it broke through the garage doors of the shop. Since the hoist mounted on the truck was interconnected with the reel and the hoist of the ceiling trolley, the sudden forward motion of the truck also pulled on the trolley, causing it to become detached and to fall from the ceiling. The trolley apparatus fell on plaintiff, inflicting serious injuries to his head and back that rendered him a paraplegic. There was evidence that on a previous occasion the truck had similarly lurched forward when Smith had inadvertently used the rear igni-

tion switch without putting the truck's transmission into neutral.

After plaintiff's suit was brought, Smith commenced a third-party action against Smeal on theories of negligence and strict products liability in defectively designing the rear ignition switch without an interlocking, "failsafe", mechanism to prevent ignition from taking place when the truck transmission was not in neutral. Plaintiff then amended his complaint to incorporate similar causes of action directly against Smeal. Upon completion of the trial, the jury found Smith 100% at fault in the happening of the accident and awarded plaintiff $625,000 in damages. It exonerated Smeal from liability in both plaintiff's and Smith's third-party actions. These appeals then ensued.

■ In our view, the judgment must be reversed because of deficiencies and errors in the trial court's charge to the jury on both the issues of liability and damages. With respect to plaintiff's cause of action in strict products liability, the court charged the jury that plaintiff had the burden of establishing that the product was being used at the time of the injury in the manner intended by the manufacturer and further that plaintiff could only recover if "it is also foreseeable that someone would hook this unit up to an overhead * * * trolley, start it, the truck, in gear and injure someone by pulling the trolley * * * off of the ceiling". The evidence certainly established that the Smeal rear ignition switch and reel attachments were being used for their intended purposes, to start the motor outside the cab and to roll plastic pipe. Nevertheless, in effect, the jury was thus charged that it was part of plaintiff's prima facie case in strict products liability that Smith's alleged *misuse* of the hoist, in connecting it to the ceiling trolley, was foreseeable by the manufacturer. In our view, the evidence could have supported a jury finding that the design of the rear ignition switch, in not incorporating a device to prevent the truck engine from being started in gear, rendered the product not reasonably safe for normal use in its potential risk of harm to anyone in the zone of danger when the truck is thereby caused forcefully and suddenly

to jump forward.[1] Assuming proof that the defect was a substantial factor in the occurrence of the accident, a jury finding that the hoist and rear ignition switch were not reasonably safe would have been sufficient to establish plaintiff's strict products liability cause of action, and the jury should have been so instructed.[2] As stated in *Robinson v Reed-Prentice Div. of Package Mach. Co.* (49 NY2d 471, 479): "Thus, a defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use * * * (Restatement, Torts 2d, § 402A)." Thus, the Court of Appeals in *Robinson* fully adopted the approach of section 402 A of the Restatement of Torts, Second, on strict products liability. Under section 402 A, the salient distinction is made between a product dangerous for use when made, and one which is originally safe, but is rendered dangerous by subsequent misuse. It is only in the latter instance that the maker is absolved from liability: "[t]he seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed" (Restatement, Torts 2d, § 402 A, Comment *g*). The distinction noted here is aptly described in *Bradford v Bendix-Westinghouse Automotive Air Brake Co.* (33 Col App 99, 111): "Section 402A does recognize a defense for the manufacturer where the consumer or user mishandles or misuses the product and thereby *creates* the dangerous condition. * * * The usual situation in which the defense will arise is where the product is being used in a way in which it was not intended to be used. However, a prerequisite for the defense is that the product must have been in a safe condition when it reached the user. If it was unreasonably dangerous at that time, the 'intervening' acts of the user can only be additional proxi-

---

**1.** Most recently, the Court of Appeals in *Voss v Black & Decker Mfg. Co.* (59 NY2d 102) adopted the single standard "not reasonably safe", to denote a defective product, in place of such phrases as "unreasonably unsafe" and "unreasonably dangerous", which previously were used interchangeably for that purpose. Whether the product was not *reasonably* safe is determined by balancing risks, benefits and burdens, including the likelihood that there would be occasions when a user would inadvertently start the truck motor in gear using the rear ignition switch (see *Voss v Black & Decker Mfg. Co., supra; Robinson v Reed-Prentice Div. of Package Mach. Co.,* 49 NY2d 471, 479, *supra*).

**2.** This is apart from a separate issue in the case concerning whether the subsequent electrical wiring of the ignition switch by a third party affected Smeal's liability.

mate causes making the two parties joint tortfeasors." (See *Voss v Black & Decker Mfg. Co.,* 59 NY2d 102, 110, n, *supra;* see, also, Rheingold, The Expanding Liability of the Product Supplier: A Primer, 2 Hofstra L Rev 521, 526, where product misuse is also identified as a "defense".) A manufacturer is also liable if its product is not reasonably safe for "an unintended yet reasonably foreseeable use" (*Micallef v Miehle Co., Div. of Miehle-Goss Dexter,* 39 NY2d 376, 386).

Thus, from the foregoing, in a case where a product is found to be not reasonably safe for its intended use, the misuse or mishandling by a third party, such as Smith here, would only be relevant for jury consideration on the issues of intervening cause and apportionment of fault. And, although not applicable here, misuse or mishandling of such an unsafe product by an injured plaintiff in a manner unintended by the maker would only be relevant on the issue of whether the plaintiff's negligence contributed to the accident (*Codling v Paglia,* 32 NY2d 330, 343; *Merced v Auto Pak Co.,* 533 F2d 71, 79 [applying New York law]). We note in this regard that *Codling* was decided prior to enactment of comparative negligence (CPLR 1411-1413, L 1975, ch 69) and before adoption of section 402 A of the Restatement of Torts, Second, by the Court of Appeals in *Robinson v Reed-Prentice Div. of Package Mach. Co.* (49 NY2d 471, *supra*). Therefore, today, if a product is not reasonably safe for its intended or reasonably foreseeable use, culpability on the part of a plaintiff in mishandling the product or in failing to exercise reasonable care to discover the defect, etc., will not bar recovery unless that conduct is found to be the sole cause of plaintiff's injury (CPLR 1411; see *Voss v Black & Decker Mfg. Co., supra,* p 110, n).

■ The error in instructing the jury that under all circumstances the foreseeability of Smith's alleged mishandling of the hoist was a necessary element of plaintiff's action in strict products liability was compounded by other errors and omissions in the charge. The court's instructions intermingled principles of negligence with those of strict products liability, and of apportionment of liability with cross claims and causation, without clearly delineating

how each separately applied to the factual issues in the case, and the jury was never explicitly instructed to consider on the damages issue plaintiff's pain and suffering and permanent limitations in life functions as elements of noneconomic loss. The jury's verdict on damages, while perhaps not inadequate as a matter of law, was significantly less than the final awards in recent cases of comparably serious injuries (see *Rush v Sears, Roebuck & Co.,* 92 AD2d 1072; *Warmsley v City of New York,* 89 AD2d 982; *Caprara v Chrysler Corp.,* 71 AD2d 515, affd 52 NY2d 114, mot for rearg den 52 NY2d 1073). Since it cannot be assumed that these shortcomings in the charge cumulatively did not affect the jury's entire verdict, we are required to reverse and remit for a new trial (*Green v Downs,* 27 NY2d 205; *Zipay v Benson,* 47 AD2d 233, app dsmd 42 NY2d 1052).

The judgment should be reversed, on the law, with costs to plaintiff against both defendants, and matter remitted for a new trial; the order denying defendant Smeal Manufacturing Company, Inc.'s motion to dismiss at the end of the entire case should be affirmed.

YESAWICH, JR., J. (concurring). Were it not for the fact that the verdict is inadequate as a matter of law, I would, in accordance with our decision in *Bodner v Steinhardt* (71 AD2d 702), direct a new trial on the liability issue only.

Though pain and suffering are sparingly treated in the court's charge, had that treatment been less than adequate, plaintiff's experienced trial counsel would have voiced appropriate objection either at the trial, or in plaintiff's motion for a new trial, or on appeal, thus, at least properly preserving this issue for appellate review (*Caprara v Chrysler Corp.,* 52 NY2d 114, 126).

Formerly a virile and vigorous young man, plaintiff, who is 27 years of age, is now a paraplegic, paralyzed from the level of the ninth thoracic vertebra down. He has no kidney, bladder or sexual function. For the rest of his life he will be confined to a wheelchair.

Measured against damages set by this court in other recent cases, the insufficiency of this verdict is apparent (see *Rush v Sears, Roebuck & Co.,* 92 AD2d 1072; *Caprara v*

*Chrysler Corp.,* 71 AD2d 515, affd 52 NY2d 114, *supra).* Accordingly, I concur in the decision to reverse the judgment and grant a new trial.

KANE, J. P., MAIN and MIKOLL, JJ., concur with LEVINE, J.; YESAWICH, JR., J., concurs in a separate opinion.

Judgment reversed, on the law, with costs to plaintiff against both defendants, and matter remitted for a new trial; order denying defendant Smeal Manufacturing Company, Inc.'s motion to dismiss at the end of the entire case affirmed.