■ CRAIG WERNER, Appellant, v SUN OIL COMPANY, Defendant and Third-Party Plaintiff-Respondent, and WAYNE PUMP COMPANY, Respondent. MARY MACDOUGALL, Doing Business as WALT'S SERVICE STATION, Third-Party Defendant-Respondent. — In an action to recover damages for personal injuries predicated on negligence and strict products liability, plaintiff appeals, as limited by his brief, from so much of a judgment of the Supreme Court, Nassau County (Burke, J.), dated September 8, 1982, as dismissed his complaint.

Judgment affirmed insofar as appealed from, without costs or disbursements.

This appeal emanates from an accident which occurred at approximately 9:00 or 10:00 P.M. on the night of January 13, 1978 when plaintiff attempted to clear away ice from the glass

face or bezel of a gasoline dispensing pump. The pump was manufactured by defendant Wayne Pump Company, owned by defendant Sun Oil Company and leased to defendant MacDougall, doing business as Walt's Service Station. The subject pump, like the other six at that service station, had two windows covering the mechanism which displayed the gallonage dispensed and the cost per sale. Plaintiff's accident occurred when he exerted force to clear the windows of the gasoline pump he was using of a residue of ice and snow which had deposited on the pump in such manner as to obscure his vision of the reading. The window face shattered as plaintiff applied pressure to it, causing his hand to go into the pump. Plaintiff conceded that he had exerted a certain amount of pressure on the glass which had caused it to break.

Plaintiff had been working at Walt's Service Station during his senior year of high school. At the time of his accident, he had been employed by that station for approximately four and one-half months and had had no prior experience as a gas station attendant.

The trial court dismissed the complaint at the conclusion of plaintiff's case. We conclude that dismissal was an appropriate remedy inasmuch as plaintiff failed to establish a prima facie case although afforded a fair and complete opportunity to do so.

The evidence presented was not sufficient to make out a prima facie case in either strict products liability or negligence. Plaintiff did not show that there is an unreasonable risk that the window glass will break when ice is removed from its surface. On the contrary, there was testimony from plaintiff's consulting engineer that frost can certainly be removed from window glass without causing it to break. That expert offered no opinion as to whether or not the use of glass in the facings of gasoline dispensing pumps was reasonably safe. Moreover, plaintiff presented no evidence whatsoever regarding past breakages of pump windows.

With respect to plaintiff's own behavior, he admitted that he never attempted to use hot water to clear off the ice although it was readily available in the rest rooms of the station. Plaintiff also testified that he never went around to the other side of the pump to ascertain whether or not he could see through the transparent facing on that side. Nor did he think of looking for an ice scraper or a spray can of de-icing compound, although there was testimony that the service station did have spray de-icer for sale. Furthermore, the record is barren of any explanation as to why any of the other six pumps available for use at the service station could not have been used to service the customer

upon whom plaintiff had been waiting at the time of his accident.

Nor do we subscribe to the argument advanced by our dissenting brother that the proffered testimony of one of plaintiff's expert witnesses, petroleum distributor George Wisser, was improperly curtailed on the ground that he was not qualified to testify concerning industry practices.

The question of whether a particular witness possesses sufficient skill, knowledge or experience to testify as an expert in a given field is subject to the discretion of the trial court and its determination will not be disturbed unless it is erroneous as a matter of law or constitutes an abuse of discretion (*Tarlowe v Metropolitan Ski Slopes*, 28 NY2d 410, 414; *Meiselman v Crown Hgts. Hosp.*, 285 NY 389, 398-399; *Molinari v Conforti & Eisele*, 54 AD2d 1113). The record herein reveals no such error of law or abuse of discretion.

As a petroleum distributor, Wisser bought products from major and independent oil companies and distributed or sold the products to his own gas stations or to those of others. At the time of trial, Wisser enterprises owned or leased approximately 60 service stations. Wisser unequivocally admitted, however, that his stations utilized pumps which did not have transparent facings. Although the court afforded plaintiff the opportunity to establish a foundation for this expert witness, plaintiff failed to establish that he was familiar with anything beyond the limited scope of his own business. In essence, plaintiff failed to show that the pumps with which he was familiar were similar to the one on which plaintiff sustained his injury. Having thus failed to prove that Wisser was knowledgeable in the design or manufacture of gasoline pumps, so as to qualify him to testify on the matter of design defect, plaintiff's use of this witness was properly curtailed.

We have considered plaintiff's remaining contentions and find them to be without merit. Thompson, Weinstein and Niehoff, JJ., concur.

Lazer, J. P., dissents and votes to reverse the judgment appealed from and to grant a new trial, with the following memorandum. This design defect case derives from a hand injury suffered by a 17-year-old gasoline station attendant when he attempted to clear ice from the face of a gasoline pump in order to read its meter during a snow storm. In the lawsuit that followed, plaintiff charged both the pump manufacturer, Wayne Pump Company, and the pump owner, Sun Oil Company, with negligence and strict products liability, alleging that the glass facing on the pump rendered it not reasonably safe for use. At

the trial, plaintiff testified that the glass shattered when he tried to clear it by "a push" or "a swipe" but there was further testimony by the operator of the gasoline station that plaintiff had pounded on the glass. The trial also revealed that some of the pumps at the gasoline station were faced with glass and some with plexiglass, that it was difficult to distinguish between the two types of pumps, and that both types were still being manufactured. To establish that the Wayne pump was not reasonably safe, plaintiff offered the testimony of both an experienced operator of gasoline stations and an engineer who had performed tests on glass and plexiglass.

The jury never passed on the issues, however, because Trial Term dismissed the complaint at the conclusion of plaintiff's case. My colleagues have voted to affirm, concluding that "plaintiff failed to establish a prima face case although afforded a fair and complete opportunity to do so". While it is true that plaintiff failed to establish a prima facie case, the record makes it apparent that he was not given a fair opportunity to do so because various evidentiary rulings severely curtailed the testimony of one of the proffered experts. Since I believe that some of these rulings were erroneous and prejudicial, I dissent and vote for reversal and a new trial.

The curtailed testimony was that of George Wisser, who had been engaged in the gasoline retailing and distribution business for over 50 years, currently owned or leased approximately 60 gasoline stations, distributed gasoline for Mobil, Citco and two unbranded companies to 40 other stations, and in the past had distributed for Texaco, Amoco and Chevron. Nevertheless, when plaintiff sought to question Wisser concerning his experience with the breakage of pump facings, the causes of breakage and problems generally encountered in clearing pump facings in bad weather, defendants objected that the pumps at Wisser's stations were of a different design than the Wayne pump and that Wisser was not qualified to testify concerning industry standards or practices relative to pump design.

In response to these objections, Trial Term initially ruled that Wisser was not qualified to testify concerning the safety of gasoline pumps with transparent facings because he had answered "No, sir" when asked on direct examination whether the pumps at his stations had transparent facings. Although it is quite apparent that this answer resulted from the question being either misheard or misunderstood, since — as plaintiff's counsel declared — it would be impossible to read numerals covered by an opaque facing, Trial Term never permitted the question to be put again, even though counsel stated that the

response was obviously a mistake, made an offer of proof, and requested permission to ask the question again, either in or out of the presence of the jury. While the court did indicate that it would allow the question to be asked again if plaintiff first could otherwise qualify Wisser as an expert, no such opportunity ever arose because the court eventually found Wisser unqualified for other reasons.

Thus, Trial Term excluded the most crucial questions put to Wisser, not on the basis of the "No, sir" answer, but rather on the ground that he was not an expert on the gasoline retailing industry. Therefore, despite Wisser's lifetime of experience as a gasoline retailer and wholesaler, he was not allowed to answer questions concerning the similarities that exist among all models of gasoline pumps, the safety records of pumps with different types of transparent facings, the problems involved in clearing pump facings and whether the pump manufacturer should have realized that its pumps would be used in bad weather and would probably be subjected to various degrees of misuse. The exclusions defeated plaintiff's ability to make out a prima facie case, despite the testimony of his other expert, an engineer who had performed studies of glass and glazing fractures. This witness declared that plexiglass costs about 30% more than ordinary glass but it is preferred over window glass where there is anticipation of impact, as in the use of storm doors or windshields. When plaintiff ultimately rested, Trial Term granted defendants' motion to dismiss, ruling that the record was devoid of any evidence that the injury resulted from a design defect or defendants' negligence.

The propriety of the exclusionary rulings should not be evaluated without considering the elements that comprise a strict liability design defect case. To prove such a case, the plaintiff must establish that the product was not reasonably safe for the use normally intended, or reasonably foreseeable, and that the defective design was a substantial factor in causing his injury (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102). In making such proof, plaintiff must also show that a reasonable person who knew of the product's potential for causing injury and the available alternatives would have concluded that the product should not have been marketed in the condition that it was, after balancing the risks involved in the use of the product against its utility and costs and against the risks, utility and costs of the available alternatives (*Cover v Cohen,* 61 NY2d 261; *Voss v Black & Decker Mfg. Co., supra,* p 108; see *Robinson v Reed-Prentice Div.,* 49 NY2d 471; 1 PJI [2d ed], 2:141). Therefore, had the plaintiff been able to make out a prima facie case, it

would have been for the jury to decide whether a reasonable person who knew of the Wayne pump's potential for causing injury and of the available alternative would have concluded that the pump should not have been marketed with glass facing after balancing the risks, costs and utility of the Wayne pump with glass facing against the risks, costs and utility of the available alternative — a pump with plexiglass facing. Since costs and utility were not significant factors in the record insofar as it developed, it appears that the difference in risk between the use of glass and plexiglass facings would have been a critical factor in the balancing equation.

Our role on this review is far more limited, however, for what we now decide is whether the court was correct when it held Wisser unqualified to testify about gasoline pumps and the risks involved in their use. I certainly have no dispute with the venerable principle that threshold determinations concerning qualifications of an expert are for the trial court's discretion which should not be overturned in the absence of serious mistake, error of law or abuse of discretion (*Meiselman v Crown Hgts. Hosp.*, 285 NY 389; Richardson, Evidence [Prince, 10th ed], § 368). In determining those qualifications, however, there is no precise rule that governs the manner in which the witness acquired his knowledge, skill or experience; the witness may be qualified through actual experience, from observation, or from study (*Caprara v Chrysler Corp.*, 52 NY2d 114; *Meiselman v Crown Hgts. Hosp., supra*). Wisser asserted that his experience stemmed from over 50 years of observation and actual experience in operating and servicing a great number of gasoline stations. Since the question is always whether the expertise of the witness is relevant to the issues under consideration (see Fisch, New York Evidence, § 428), on the record before us, I see no basis for precluding Wisser's testimony and no merit in defendants' contention that he was not qualified to testify concerning his experience with pumps in bad weather because he was not knowledgeable in the design or manufacture of gasoline pumps (see *Caprara v Chrysler Corp., supra*, p 121; *Delair v Gaudet*, 4 AD2d 736).

Indeed, Wisser's experience with gasoline pump accidents seems quite relevant to plaintiff's case. Since a jury in a design defect case may consider the likelihood that the product will cause injury (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 109, *supra;* see 1 PJI [2d ed], 150-151 [1983 Supp]), evidence of similar injuries involving the same type of product may be admitted to prove the dangerousness of the product (*Bolm v Triumph Corp.*, 71 AD2d 429; 1 Weinberger, New York Prod. Liab., § 14.26). If the Wayne pump differed from those at the

Wisser stations, the probity of Wisser's testimony might have been shown to be limited or even of no consequence, but until the extent and the significance of the difference between the pumps was adequately explored, he should not have been disqualified, and the many relevant questions put to him should not have been excluded (see *Di Carlo v Ford Motor Co.*, 77 AD2d 643). These exclusions thwarted plaintiff's efforts to establish that the Wayne pumps were similar to those used at Wisser's stations.

Had he been permitted to answer, Wisser's experience with the problems and causes of breakage might have been quite relevant to prove that glass facings in gasoline pumps are prone to breakage and therefore the Wayne pump — depending on its degree of similarity to those which Wisser was familiar — was not reasonably safe for its intended and foreseeable use (*Micallef v Miehle Co.*, 39 NY2d 376). Also relevant were the questions concerning the possible misuse of gasoline pumps and the all-weather operations of gas stations. Such testimony might have demonstrated that plaintiff's effort to clear the pump face in inclement weather was reasonably foreseeable (see *Robinson v Reed-Prentice Div.*, 49 NY2d 471, 478-480, *supra*). The fact that Wisser was not a member of a trade association or that he dealt solely with Long Island gas stations also provided no basis for his disqualification, for if these factors limited his experience or expertise, they went solely to the weight to be given his testimony.

Defendants' final contention is that plaintiff failed to make a sufficient offer of proof with reference to the excluded testimony. My reading of the record indicates, however, that plaintiff brought the issue to the attention of the trial court in a manner that pinpointed the relevant legal questions (see *Kalisch-Jarcho, Inc. v City of New York*, 58 NY2d 377; *People v Cobos*, 57 NY2d 798). Concerning pump face breakage, plaintiff's counsel declared that Wisser, who owned approximately 60 stations and serviced some 40 more, and who had been involved in the sale and distribution of gasoline from pumps for more than 50 years, would tell the jury "what's to be expected in terms of using glass or other products in connection with the transparent facings on the pumps and to give us his experience in that regard", and that Wisser would testify as to the problems he had found in dealing with glass facings. Concerning possible misuse of the product and the all-weather nature of gas stations, counsel suggested that the testimony would demonstrate that what plaintiff did with the pump was foreseeable when he remarked that Wisser would state that it is "to be expected the fact that

the glass would be misused in any way" and that the manufacturer "should have known that [its] pumps were going to be used in ice, rain, sleet and snow". The offer of proof was adequate.

Disregarding these factors and ignoring the actual reasons ultimately given by Trial Term for disallowing Wisser's testimony, the majority of this court rests its decision largely upon the fact that Wisser gave the "No, sir" answer when asked whether his pumps had transparent facings. Since a gasoline pump with an opaque facing would be a pump from which it would be impossible to determine the amount or price of the gasoline being sold, it was an improvident exercise of discretion for the court to reject plaintiff's offer of proof on this point and to refuse to allow the question unconditionally to be put to Wisser once again. Indeed, if this single question was absolutely necessary to qualify Wisser as an expert, as my brethren conclude, the court's offer to allow the question to be asked on condition that plaintiff first qualify Wisser without asking that question was illusory. To place a party in the position of being required to prove a point which cannot be proven absent certain evidence, before allowing him to introduce that very evidence, is prejudicial error. Here, the trial court simply wished to determine whether Wisser was an expert in the gasoline retailing industry before allowing him to be questioned about the type of pumps he owned, for if Wisser did not qualify as an expert at all, his testimony concerning the facing on his pumps would have been irrelevant. Thus by placing so much reliance on the "No, sir" answer, the majority of this court wrenches the entire incident completely out of context and gives it a meaning and a significance Trial Term never intended. Trial Term simply decided Wisser was not qualified apart from the transparency issue and I believe that decision was wrong.

Finally, my colleagues' emphasis on plaintiff's possible misuse of the pump as a ground for dismissal is misplaced. If established, misuse would have been relevant for the jury to consider on the issue of comparative fault that would reduce plaintiff's entitlement to damages (see *Voss v Black & Decker Mfg. Co.,* 59 NY2d 102, 110, *supra; Sheppard v Smith Well Drilling & Water Systems,* 93 AD2d 474). If it found that the pump was not reasonably safe for its intended or reasonably foreseeable use, the jury would have been required to also decide how much the misuse of the pump by the plaintiff reduced his entitlement to damages.

My conclusion, then, is that the exclusionary rulings erroneously extinguished the plaintiff's capacity to make a prima facie case. Accordingly, I dissent and vote to reverse the judgment appealed from and to grant a new trial.