George MIRABELLA, Plaintiff,

v.

ROSS INDUSTRIES, INC., Defendant.

ROSS INDUSTRIES, INC., Third Party Plaintiff

v.

THRIFT PAK FOOD SERVICE, INC., a/k/a Colorado Prime Inc., Third Party Defendant.

ROSS INDUSTRIES, INC., Second Third Party Plaintiff,

v.

The FAIRBANKS COMPANY, Second Third Party Defendant.

No. 85 C 4346.

United States District Court, E.D. New York.

Aug. 16, 1988.

Robert R. Felton, P.C., Mineola, N.Y., for plaintiff.

White, Fleischner & Fino (Eric B. Schoenfeld, of counsel), New York City, for third party plaintiff.

Alexander, Ash, Schwartz & Cohen, P.C. (Christopher P. DiGiulio, of counsel), New York City, for first third party defendant.

D'Amato & Lynch (Bill V. Kakoullis, of counsel), New York City, for second third party defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff George Mirabella brought this action to recover damages for injuries sustained while employed on November 27, 1984 in operating a high-powered meat press which seized and mangled his hand. The complaint makes claims in negligence, strict products liability and breach of implied warranty against defendant Ross Industries, Inc. (Ross), the manufacturer of the press. Ross answered and filed third party actions claiming (1) negligent repair and material alteration by plaintiff's employer Thrift Pak Food Service, Inc. (Thrift Pak) and (2) negligence, strict products liability and breach of warranty against The Fairbanks Company (Fairbanks) alleged to have manufactured caster wheels on the machine. The third party defendants filed counterclaims against Ross and cross-claims against each other.

Ross has moved for summary judgment on plaintiff's action, and Fairbanks has moved for summary judgment on the third party action filed by Ross.

### I.

Ross manufactured the press that injured plaintiff in July of 1983 and sold it to Thrift Pak the next month. Through hydraulic pressure the press transformed meat products into uniform logs. The operator would open two sliding doors and then reach through them to place the product in place. Only when the operator closed both doors manually was the machine supposed to undergo an automatic hydraulic cycle.

Plaintiff was injured while loading meat through one of the doors. According to his deposition, while his arm was still through one door, the other door closed on its own, and the press underwent a cycle, mangling plaintiff's hand.

The parties agree that as designed the press should not have cycled with one door open. Their papers reveal four principal, undisputed facts relevant to the press's errant operation.

The sliding doors were equipped with magnetic sensors tied into the press's electrical system. Ross designed the press to be wired in "series" so that it could cycle only if the sensors registered both doors as being closed. The press in question, however, was wired in "parallel," and therefore could cycle with one door open. Ross does not dispute plaintiff's allegation that the machine when shipped had this wiring defect.

The parties also do not dispute that Thrift Pak had replaced certain fuses in the press with oversized ones. These oversized fuses caused one of the machine's two so-called "triac circuits" to be permanently turned on. This condition subverted what Ross terms "the secondary fuse safety system" and permitted the machine to operate with one door open. Thrift Pak employee Skip Simmons placed the oversized fuses into the machine. Though on several occasions Simmons had consulted Ross concerning repairs to the electrical system, he did not consult Ross or its manual before replacing the fuses.

Also undisputed is the fact that Thrift Pak had had a problem with one of the four casters on which the machine rested. Each caster consisted of a metal wheel casting and a rubber tire. The day before the accident Thrift Pak raised the press in an attempt to put back into place a rubber tire that had dislodged from a caster wheel. Both plaintiff and Ross contend that this difficulty caused the machine to be out of level, thereby permitting one of the doors to slide closed on its own. Fairbanks takes issue with these contentions and further denies knowledge that the wheel, which was discarded after the accident, was of their manufacture.

It is also uncontested that the plaintiff knew for at least one week before the accident that the press could run with one door open; yet plaintiff continued to operate the machine. Plaintiff asserts that he informed Thrift Pak of the problem and that Thrift Pak instructed him to continue operations with great caution. Thrift Pak denies having had knowledge of the condition.

## II.

On a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Summary judgment will lie against the party bearing the burden of proof if that party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986).

### A.

■ Fairbanks's motion for summary judgment on Ross's claims against it turns on whether Ross has advanced proof to raise a material issue as to whether Fairbanks's acts or omissions were a proximate cause of the accident.

Both Ross and plaintiff allege that a cause of the accident was the closing of one of the press's doors on its own. They further allege that the rubber tire on one of the four caster wheels supporting the press had come off, causing the machine to be out of level and therefore permitting the door to slide shut on its own.

Thrift Pak discarded the caster after the accident. Nevertheless, the court concludes that the parties have submitted sufficient evidence to allow a jury to make findings consistent with these arguments. There is also sufficient evidence of Thrift Pak's purchasing practices to allow a jury to find that the caster was of Fairbanks's manufacture.

However, because the caster was discarded, there is no direct evidence that it was defective when shipped to Thrift Pak.

To meet its burden on the strict liability claim, therefore, Ross must introduce evidence from which a jury might exclude other explanations for the tire having come off the caster. *See, e.g., Halloran v. Virginia Chemicals Co.*, 41 N.Y.2d 386, 393 N.Y.S.2d 341, 361 N.E.2d 991 (1977); *Shelden v. Hample Equipment Co.*, 89 A.D.2d 766, 453 N.Y.S.2d 934 (3rd Dep't 1982), *aff'd*, 59 N.Y.2d 618, 463 N.Y.S.2d 194, 449 N.E.2d 1272 (1983). In these cases a single general cause produced the accident, and because the product was unavailable the courts required the plaintiff to exclude all other causes of the accident as a whole other than a product defect existing at the time of shipping. In the present case, there is evidence of four general causes of the accident—faulty wiring of one safety device, subversion of fuses in another, use of the machine with knowledge of failures in the safety systems, and the capacity of one of the machine's doors to close on its own. Plainly Ross should not be required to exclude defects in the wiring, defects in the fuses or negligent use of the press as causes of the accident. But it is reasonable to require Ross to exclude all causes of the automatic closing of the door other than a manufacturing defect in the caster.

This Ross has not done. There is sufficient evidence from which a jury might conclude that deleveling caused by a caster's tire coming off contributed to the door's sliding closed. But Ross has not pointed to sufficient evidence of its own design and manufacture of the press and of Thrift Pak's use of the machine to enable a jury to say that the cause of the tire's coming off was a manufacturing defect present when Fairbanks shipped to Thrift Pak. *Cf. Shelden, supra.*

Indeed, the proof points to Ross. A former Ross employee stated at deposition that tires had come off the casters on its equipment on some 50 occasions. Despite notice of this difficulty, Ross apparently took no action. *Cf. Braniff Airways, Inc. v. Curtiss Wright Corp.*, 411 F.2d 451 (2d Cir.) (duty of manufacturer to remedy known defects), *cert. denied*, 396 U.S. 959, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969). Moreover, according to the uncontradicted affidavit of Fairbanks' vice president, it never received any complaints from Ross.

Even if Ross could satisfy a jury that a manufacturing defect in the caster at the time of shipment to Thrift Pak caused the tire to come off the caster at the time of the accident, the conduct of Fairbanks cannot be deemed a proximate cause of the accident. The conduct of a defendant proximately causes injury to a plaintiff when it is "a substantial cause of the events which produced the injury." *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980). "Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, ... liability turns on whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant...." *Id.*

From Fairbanks's perspective a remarkable series of events hardly describable as "normal or foreseeable," gave rise to the accident. Fairbanks, even if it manufactured a defective caster, could not reasonably have foreseen that the deleveling effect of a tire's coming loose would cause a door on a machine to slide closed on its own and automatically start a press with the operator's hand in it because two of the machine's safety systems were inoperable and despite the operator's knowledge of the breakdown.

Fairbanks's motion for summary judgment is granted.

### B.

In arguing for summary judgment against plaintiff, Ross says that the problem with the caster was attributable to Fairbanks, that the use of improper fuses was attributable to Thrift Pak, and that plaintiff and Thrift Pak or both were negligent in continuing to operate the press with one door open. Ross urges that these factors were of such a magnitude as to show that it did not proximately contribute to plaintiff's injuries.

To succeed against Ross plaintiff need present only sufficient evidence to put into issue whether actions attributable to Ross

could be a "substantial factor" in producing the accident. *See, e.g., Derdiarian, supra,* at 315, 434 N.Y.S.2d 166, 414 N.E. 2d 666.

Ross does not deny that (1) the press was designed to be wired in series and not in parallel, (2) the machine was wired in parallel, and (3) this condition existed when Ross delivered the machine to Thrift Pak. The issue of the extent to which this defect proximately caused plaintiff's injuries is for the jury.

As to Thrift Pak's placement of oversized fuses into the machine, all parties agree that *both* the oversized fuses and Ross's improper wiring permitted that machine to operate with one door open. Ross points to no indisputable evidence demonstrating that the problem with the fuses somehow superceded the wiring defect in contributing to the accident. Also, even if Thrift Pak itself was negligent in placing fuses in the press, the law often imposes a responsibility on one party to anticipate the negligence of another. *See, e.g., Pastorello v. Koninklijke Nederl Stoomb Maats,* 456 F.Supp. 882, 887 (E.D.N.Y.1978). *See also Derdiarian, supra,* 51 N.Y.2d at 315, 434 N.Y.S.2d 166, 414 N.E.2d 666 (foreseeable acts of third party do not disrupt chain of proximate causality). Ross gave Thrift Pak considerable advice as to repairs it was making to the electrical system. A jury might conclude that Ross should have anticipated Thrift Pak's negligence in doing so.

The fact that plaintiff, with or without the approval of Thrift Pak, operated the machine with knowledge that it could cycle with one door open, does not absolve Ross of responsibility. Even if plaintiff put himself at risk in operating the press, there is no indisputable evidence that he knew one of the doors could close on its own. Any intervening negligence on the part of Thrift Pak or plaintiff was not so extraordinary or unforeseeable in the normal course of events as to warrant taking the issue of causality away from the jury. *Derdiarian, supra,* at 315–16, 434 N.Y.S.2d 166, 414 N.E.2d 666.

Ross argues that plaintiff's knowledge of the machine's problems absolves it from liability and relies on the following language from the Court of Appeals decision in *Codling v. Paglia,* 32 N.Y.2d 330, 342, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973):

> We accordingly hold that, under a doctrine of strict products liability, the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages; provided (1) that at the time of the occurrence the product is being used (whether by the person injured or damaged or by a third person) for the purpose and in the manner normally intended, (2) that if the person injured or damaged is himself the user of the product he would not by exercise of reasonable care have both discovered the defect and perceived its danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages.

The *Codling* decision was made before New York adopted the principal of comparative negligence. *See* C.P.L.R. § 1411. The cited language presupposes the old rule that contributory negligence bars recovery. Today, any intervening negligence on the part of plaintiff or Thrift Pak would only absolve Ross if that negligence was superceding as a matter of proximate cause. *See Sheppard v. Charles A. Smith Well Drilling,* 93 A.D.2d 474, 463 N.Y.S.2d 546, 548–49 (3rd Dep't 1983).

Ross urges that Thrift Pak substantially modified the press by using oversized fuses so as to relieve Ross of liability. "Substantial modifications of a product from its original condition by a third party which render a safe product defective are not the responsibility of the manufacturer." *Robinson v. Reed–Prentice Division of Package Machinery Co.,* 49 N.Y.2d 471, 479, 426 N.Y.S.2d 717, 403 N.E.2d 440 (1980). The machine's faulty parallel wiring was concededly the fault of Ross, and thus the press was not a "safe product" when it left the manufacturer.

The court has considered Ross's other arguments and does not find them persuasive.

## CONCLUSION

Fairbanks's motion for summary judgment on all claims against it is granted. Circumstances do not warrant the court's finding under Rule 54(b) of the Federal Rules of Civil Procedure that this shall be a final, partial judgment. Ross's motion for summary judgment is denied. So ordered.